1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11  GUIILLERMO NUNO,

12                    Plaintiff,

13        v.

14  D. ESLICK, et al.,

15                    Defendants.

16

No.  1:21-cv-00769-ADA-SAB (PC)

FINDINGS AND RECOMMENDATIONS
REGARDING DEFENDANTS' MOTION TO
DISMISS

(ECF Nos. 57, 60)

17        Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to

18  42 U.S.C. § 1983.

19        Currently before the Court is Defendants' motion to dismiss, filed May 16, 2023.  (ECF

20                                            **I.**

21                          **PROCEDURAL BACKGROUND**

22        This action is proceeding on Plaintiff's deliberate indifference claims against Defendants

23  Eslick and Flores and retaliation claims against Defendants Satterfield and Flores.  (ECF No.

24  21.)

25        Defendants filed an answer to the original complaint on January 18, 2022.  (ECF No. 30.)

26        On January 26, 2022, the Court set the case for settlement conference on April 12, 2022.

27  (ECF No. 31.)  However, on March 22, 2022, Defendants filed a notice to opt-out of the

28  settlement conference which was granted this same day.  (ECF Nos. 36, 37.)  On this same day,

1

1    the Court issued the discovery and scheduling order.  (ECF No. 38.)

2         On May 5, 2023, the Court granted Plaintiff's motion to amend the complaint and his first

3    amended complaint was filed this same date.  (ECF Nos. 54, 55.)

4         On May 15, 2023, Defendant Satterfield filed an answer to the first amended complaint,

5    and Defendants Eslick and Flores filed the instant motion to dismiss.  (ECF Nos. 56, 57.)  An

6    amended motion to dismiss was filed on May 16, 2023.  (ECF No. 60.)

7         On July 5, 2023, Plaintiff filed an opposition and motion to amend the complaint, along

8    with a proposed second amended complaint which was lodged.  (ECF Nos. 67, 68.)

9    Defendants filed a reply on July 19, 2023.  (ECF No. 69.)  Accordingly, Defendants' motion to

10   dismiss is submitted.  Local Rule 230(l).

11                                          **II.**

12                                     **DISCUSSION**

13        **A.    Legal Standard**

14        A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim,

15   and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient

16   facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240,

17   1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion,

18   a court's review is generally limited to the operative pleading.  Daniels-Hall v. National Educ.

19   Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007);

20   Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

21        To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

22   as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

23   (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted);

24   Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir.

25   2009). The Court must accept the factual allegations as true and draw all reasonable inferences

26   in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910;

27   Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).

28        Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt

                                              2

1    resolved in their favor. <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012); <u>Watison v.</u>

2    <u>Carter</u>, 668 F.3d 1108, 1112 (9th Cir. 2012); <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1101 (9th Cir.

3    2011); <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010).

4         **B.**     **Allegations of First Amended Complaint**

5         Plaintiff was subjected to unprovoked instances of harassment by Defendant D. Eslick in

6    the form of derogatory remarks when Plaintiff passed by Eslick's presence such as on the way to

7    the dining hall, and other areas of the prison grounds.

8         Beginning in August 2019, Eslick would exclaim to Plaintiff: "faggot," "you got a small

9    penis," "go suck," "masturbatory," aimed at Plaintiff to hear and also intended to incite violence.

10   Defendant Eslick know that such statements can incite violence against Plaintiff when overheard

11   by another inmate yet chose to make the verbal statements toward Plaintiff whenever the

12   opportune time would occur.   Such harassment continued and exacerbated with statements

13   exclaimed to Plaintiff: "piece of shit," "watch your back," "I'll get you off the yard," "I'm going

14   to get you knocked out"!  Eslick used the prison jargon terminology "piece of shit" to infer that

15   Plaintiff is a child molester, intending for other inmates to overhear the remarks with the

16   implication Plaintiff is a child molester—thereby becoming a target by inmates that will attack

17   Plaintiff hearing about the offense from correctional officers.   Inmates would believe such

18   exclamations spoken.

19        Defendant D. Eslick purposefully and deliberately influenced many of the Sierra

20   Conservation Center staff to commit various deeds of misconduct against Plaintiff.  Plaintiff will

21   prove such has repeatedly occurred with over 300 pages of documentations of the evidence, as

22   well as fellow inmate witnesses.

23        Plaintiff has during all times of being subjected to these many instances of harassment abuse

24   made verbal and written grievances to Defendant Eslick's superiors, as well as the many

25   additional medical personnel involved that have taken reprisals against Plaintiff.  The immediate

26   results of Plaintiff's reports were met only with additional reprisals taken, with no result expected

27   by Plaintiff pursuant to due process of law.

28        It is further alleged that Plaintiff has become at risk of harm as a direct result of the

1    Defendant's unlawful harassment and unlawful influence of other staff persons at Sierra

2    Conservation Center.

3         Repeated fabrications of Rules Violations were issued after Plaintiff made complaints about

4    Defendant Eslick carrying out the threats made to Plaintiff.

5         Defendant Satterfield became aware that Plaintiff initiated the process necessary to exhaust

6    the administrative remedies involving Defendants Eslick and Flores.  Plaintiff had to legally

7    pursue the CDCR 22 request form procedure.  Plaintiff had to write complaints upon Eslick's

8    misdeeds and obtain replies from Eslick's supervisors.  Defendant Satterfield became aware of

9    these complaints and began to purposefully subject Plaintiff to extreme harassment tactics.

10        On February 16, 2020, while Plaintiff was attending religious services, Satterfield stalked

11   and located Plaintiff, walked Plaintiff into a holding cell area of the prison away from view of

12   everyone, and forced Plaintiff to remove all of his clothing for a so-called strip search in which

13   no cause existed.  Satterfield told Plaintiff: "you're going to the hole!"—inferring that Plaintiff

14   would be moved to administrative segregation.  Satterfield began remarking to Plaintiff, "you

15   keep writing up 602's (inmate appeals) on Eslick and other officers here."  Plaintiff became

16   nervous and feared officer Satterfield.  Satterfield then had Plaintiff moved from his housing unit

17   into another to create further turmoil for Plaintiff.  Satterfield then instigated his supervisor

18   lieutenant Bullock to actually place Plaintiff in administrative segregation on February 13, 2021.

19   It was subsequently determined that Plaintiff was wrongly placed in administrative segregation.

20   Although Plaintiff had concerns about his safety, it was because correctional staff were harassing

21   him. Satterfield engaged in unconstitutional actions against Plaintiff in retaliation for his previous

22   grievances against officers Eslick and Flores.

23        Throughout February and March 2021, Satterfield continued to stalk Plaintiff telling him,

24   "you keep it up (filing the 602 complaints) and you will next be in a plastic bag!"

25        Defendant Flores became aware that Plaintiff had initiated the process necessary to exhaust

26   the administrative remedies involving Defendants Eslick and Satterfield.  Plaintiff had to first

27   pursue the CDCR 22 request form procedure by writing complaints about Eslick and Satterfield's

28   misdeeds.  Defendant Flores became aware of these complaints written against her fellow

4

1    officers, and began to purposely subject Plaintiff to harassment techniques.

2         On October 17, 2019, as Plaintiff was walking past Defendant Flores, she loudly exclaimed

3    so other inmates could hear: "you're a fucking piece of shit!!"  Defendant Flores yelled this

4    verbiage knowing that inmates overhearing such would accept it as a true account that Plaintiff

5    is a sex offender, thereby placing him at risk of assault or being killed by other inmates. Defendant

6    Flores then informed Defendant Satterfield about her provocation of Plaintiff, and Satterfield

7    again threatened Plaintiff not to file an inmate grievance against Flores.

8         **C.      Plaintiff's Lodged Second Amended Complaint**

9         Plaintiff amended his complaint once on May 5, 2023, therefore, leave of Court to further

10   amend the complaint is required.  Fed. R. Civ. P. 15(a)(2).  It appears that Plaintiff's proposed

11   second amended complaint is filed in response to Defendants' motion to dismiss.  However,  for

12   the reasons explained below, the Court recommends that Defendants Eslick and Flores's motion

13   to dismiss the first amended complaint as the claims against them be denied.  Consequently, there

14   is no need for the filing of a second amended complaint and Plaintiff's request is unnecessary and

15   futile.

16        **D.      Defendants' Motion to Dismiss**

17        Defendants Eslick and Flores argue that the first amended complaint "fails to plead any

18   facts that: (1) either Officer Eslick or Flores were aware that such a term [piece of shit] indicated

19   or inferred Plaintiff was a child molester; (2) any inmates were present or within an earshot of

20   the alleged statement by each defendant; and (3) such a statement was made by defendant

21   knowing it subjected Plaintiff to a substantial risk of harm."  (ECF No. 60 at 3.)   Defendants

22   Eslick and Flores also argue that Plaintiff fails to state a cognizable retaliation claim against them.

23   For the reasons explained below, the Court does not agree.

24        1.      Deliberate Indifference to Safety

25        "A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate

26   violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994).  For allegations

27   of deliberate indifference to safety by a prison official to state an Eighth Amendment claim, they

28   must satisfy two requirements. First, the deprivation or harm suffered by the prisoner must have

1    been "sufficiently serious," that is, "the inmate must show that he is incarcerated under conditions

2    posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501

3    U.S. 294, 298 (1991), and citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  And second, the

4    "prison official must have a 'sufficiently culpable state of mind,' " that is, "one of 'deliberate

5    indifference' to inmate health or safety.' " Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at

6    297, 302-03).

7         The mental state of deliberate indifference is equivalent to that of reckless disregard; to be

8    liable, the prison official must know of and disregard an excessive risk to inmate health or safety.

9    Farmer, 511 U.S. at 836-37. "[T]he official must both be aware of facts from which the inference

10   could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

11   Id. at 837.  An Eighth Amendment claimant need not show that a prison official acted or failed

12   to act believing that harm actually would befall an inmate; it is enough that the official acted or

13   failed to act despite his knowledge of a substantial risk of serious harm.  Id. at 842.

14        The "objective prong" involving a "substantial risk of serious harm" requires prisoners

15   establish they might suffer "further significant injury" or experience the "unnecessary and wanton

16   infliction of pain." Id. The "subjective prong" requires prisoners establish prison officials

17   "knowingly and unreasonably disregarded" the risk of harm. Farmer, 511 U.S. at 846. Put

18   differently, prison officials must know "about the risk to which prisoners were exposed" but then

19   "deliberately choose to maintain the harmful policies" or practices.  Disability Rights Montana,

20   Inc. v. Batista, 930 F.3d 1090, 1099 (9th Cir. 2019).

21        The question under the Eighth Amendment is whether prison officials, acting with

22   deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to

23   his or her future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. at 35.  Thus, the issue

24   to be determined, here, is whether Defendants' conduct placed Plaintiff at a substantial risk of

25   serious future harm.

26        Defendants initially argue that Plaintiff's allegations rest solely on allegations that they

27   made verbal threats against Plaintiff.  Based on a review of the first amended complaint, the Court

28   finds that Plaintiff's allegations are more than mere verbal threats.

1    With regard to Defendant Eslick, Plaintiff alleges, in pertinent part:

2
3    Plaintiff began to be subjected to unprovoked instances of harassment by Defendant D.
     Eslick in the form of Eslick stating derogatory remarks when Plaintiff passed by Eslick's
4    presence such as on the way to the dining hall, and other areas of the prison grounds.
     Beginning in August 2019, Eslick would exclaim to Plaintiff: "faggot," "you got a small
5    penis," "go suck," "masturbator"— comments unquestionably aimed at Plaintiff to hear and
     also intended to incite violence.  Defendant Eslick knows that such statements can incite
6    violence against Plaintiff when overheard by another inmate yet chose to make the verbal
     statements towards Plaintiff whenever the opportune time would occur.  Such harassment
7    continued and exacerbated, with statements exclaimed to Plaintiff: "piece of shit," "watch
     your back," "I'll get you off the yard," "I'm going to get you knocked out!"  Eslick used
8    the prison jargon terminology "piece of shit" to infer that Plaintiff is a child molester,
     intending for other inmates to overheard the remarks with the implication that Plaintiff is a
9    child molester—therefore becoming a target by inmates that will attack Plaintiff hearing
     about of the offense from the mouth of a correctional officer.  Inmates would believe such
10   exclamations spoken.

11
     Defendant Eslick caused Plaintiff to suffer severe emotional distress to the point of
12   experiencing suicidal ideation, anxiety from fear of attack by inmates, loss of personal
     property, and fear to seek redress of harms.
13

14   (ECF No. 58 at 3.)

15   With regard to Defendant Flores, Plaintiff alleges, in pertinent part:

16
     Defendant Flores became aware that Plaintiff had initiated the process necessary to exhaust
17   administrative remedies involving other defendants Eslick and Satterfield.  Plaintiff had to
     legally first pursue the CDCR 22 request form(s) procedure.  Plaintiff had to write
18   complaints about Eslick and Satterfield's misdeeds inflicted upon Plaintiff.  Defendants
     Flores became aware of these complaints written against her fellow officers, and began to
19   purposely subject Plaintiff to extreme harassment techniques.  On October 7, 2019, as
     Plaintiff was walking past Defendant Flores, she loudly exclaims so as other inmates could
20   hear: "You're a fucking piece of shit!!".  Defendant yelled-out this verbiage knowing that
     inmates overhearing such would accept it as a true account that Plaintiff is an offender of
21   sexual molestation against minors—thus placing Plaintiff at risk of assault or being killed
     by inmates. …
22

23   Defendant caused Plaintiff to suffer severe emotional distress to the point of experiencing
24   suicidal ideation, anxiety from fear of attack by inmates, and fear to seek and follow through
     with redress of the harms being caused.
25
     (ECF No. 58 at 7.)
26
         In accepting all the allegations of the first amended complaint as true, construed in
27
     Plaintiff's favor, and resolving all ambiguities or doubts in Plaintiff's favor, Plaintiff has stated a
28

7

1    cognizable claim against Defendant Eslick.  Plaintiff alleges that Eslick intentionally made

2    derogatory remarks, including "piece of shit" to infer to other inmates that Plaintiff was a child

3    molester.  Plaintiff also alleges Eslick knows such statements can incite violence against Plaintiff

4    when overheard by another inmate yet chose to make the verbal statements towards Plaintiff

5    intending other inmates to overhear thereby becoming a target for attack by other inmates.  These

6    allegations, viewed as a whole, are sufficient to demonstrate that Defendant Eslick acted with

7    deliberate indifference to Plaintiff's safety.  The same is true as to Defendant Flores.  Plaintiff

8    alleges that as Plaintiff was walking past Defendant Flores, she loudly exclaimed so other inmates

9    could hear that Plaintiff was a "piece of shit."  Plaintiff further alleges that Defendant Flores knew

10    yelling that Plaintiff was a "piece of shit"  in front of other inmates to inform them Plaintiff is a

11    child molester placing him at physical risk by other inmates.  While Defendant's comment did

12    not use the word "child molester," based on Plaintiff's express allegations it nonetheless carried

13    the suggestion that he was a "piece of shit" which is a known derogatory term for "child

14    molester."  See Morris v. Burrkhouse, No. CV 19-5839-SVW (KK), 2021 WL 2119497, at *4

15    (C.D. Cal. Mar. 24, 2021) (stating that "[t]he allegations that Defendants, for the purpose of being

16    malicious and vindictive and identifying Plaintiff to the prison population as a sex offender,

17    falsely accused Plaintiff of a violation which they knew would result in dangerous consequences

18    are sufficient to establish Defendants acted with deliberate indifference to Plaintiff's safety");

19    Adams v. Tilton, No. 1:07-CV-00791 GSA PC, 2009 WL 2915100, at *13 (E.D. Cal. Sept. 9,

20    2009) (calling plaintiff a "Chester" in front of other inmates is akin to calling him a "snitch").  In

21    addition, it is reasonable to infer from Plaintiff's allegations that other inmates may have

22    overheard both Defendant Eslick and Defendant Flores's statements as was their alleged intent.

23        Furthermore, Plaintiff may not have been physically assaulted by other inmates; however,

24    the standard for safety does not require a showing that Plaintiff suffered actual injury as a result

25    of Defendants' conduct. Rather, Plaintiff must show that Defendants knew of and disregarded a

26    substantial safety risk. See Farmer, 511 U.S. at 837; see also Berg v. Kincheloe, 794 F.2d 457, 459

27    (9th Cir. 1986).  Indeed, it is well-settled by the Supreme Court that a prisoner "need not wait until

28    he is actually assaulted before obtaining relief." Helling v. McKinney, 509 U.S. at 33.  In addition,

1    assuming as this Court must, that "piece of shit" is a known prison term for "sex offender," it is

2    well known that inmates labeled as  sex offenders are subject to attack in prison. See Neal v.

3    Shimoda, 131 F.3d 818, 829 (9th Cir. 1997); Gilbert v. Allison, No. 1:19-cv-01464-SAB (PC),

4    2019 WL 6683140, at *4 (E.D. Cal. Dec. 6, 2019); Nailing v. Fosterer, No. CIV S-09-2475-MCE-

5    CMK, 2012 WL 1130655 at *8 (E.D. Cal. Mar. 2, 2012).  Accordingly, the Court recommends

6    that Defendants' motion to dismiss Plaintiff's deliberate indifference claims be denied.

7         2.     Retaliation

8         Defendants argue that retaliation claims against Defendants Eslick and Flores are

9    conclusory in nature and fail to state a claim.

10        "Prisoners have a First Amendment right to file grievances against prison officials and to

11   be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

12   (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a

13   viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

14   state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

15   conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and

16   (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson,

17   408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must

18   establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34

19   F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

20        The Ninth Circuit has held that "an objective standard governs the chilling inquiry; a

21   plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' by the

22   adverse action but rather that the action at issue 'would chill or silence a person of ordinary

23   firmness from future First Amendment activities.' " Brodheim, 584 F.3d at 1270 (quoting Rhodes,

24   408 F.3d at 568–69); see also Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th Cir.

25   2006).

26        Threats of physical harm, while insufficient on their own to constitute a violation of the

27   Eighth Amendment, may constitute an "adverse action" in the context of a First Amendment

28   retaliation claim. Watison, 668 F.3d at 1115-16 (finding defendant officer's threat to hit plaintiff

1    in the mouth was an "adverse action"); see also Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir.

2    2001) (holding the mere threat of prison transfers can constitute adverse action for purposes of

3    retaliation claims). Both litigation in court and filing inmate grievances are "protected activities"

4    and it is impermissible for prison officials to retaliate against inmates for engaging in these

5    activities. See Rhodes, 408 F.3d at 567; Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)

6    (holding placement in administrative segregation for engaging in such protected activities

7    constitutes an "adverse action" under Rhodes). "Because direct evidence of retaliatory intent rarely

8    can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be

9    inferred is sufficient to survive dismissal." Watison, 668 F.3d at 1114; Pratt v. Rowland, 65 F.3d

10   802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of

11   retaliatory intent").

12         With regard to Defendant Eslick, Plaintiff alleges, in pertinent part:

13   
14         Defendant D. Eslick purposely and deliberately influenced many of the Sierra Conservation
           Center staff to commit various deeds of misconduct against Plaintiff.  Plaintiff will prove
           such has repeatedly occurred with 300 pages of documentation of evidence, as well as
15         fellow inmate witnesses.
           Plaintiff has during all times of being subjected to these many instances of harassment abuse
16         made verbal and written grievances to Defendant Eslick's supervisors, as well as the many
           additional medical personnel involved that have taken reprisals against Plaintiff.  The
17         immediate results of Plaintiff's reports were met only with additional reprisals taken, with
           no result expected by Plaintiff pursuant to due process of the law.
18         It is further alleged by and through this verified complaint, Plaintiff has become at risk of
19         harm as a direct result of the Defendant's unlawful harassment and unlawful influence of
           other staff persons at the Sierra Conservation Center.
20         Plaintiff requests the court to add a retaliation claim due to repeated fabrications of Rules
           Violations (even though witnesses were present( after Plaintiff made complaints, of
21         Defendant Eslick, carrying out the threats made to Plaintiff, including the collusion,
22         fabrication done with the Defendants.

23   (ECF No. 58 at 4.)

24         With regard to Defendant Flores, Plaintiff alleges, in pertinent part:

25         Defendant Flores became aware that Plaintiff had initiated the process necessary to exhaust
           administrative remedies involving other defendants Eslick and Satterfield.  Plaintiff had to
26         legally first pursue the CDCR 22 request form(s) procedure.  Plaintiff had to write
           complaints about Eslick and Satterfield's misdeeds inflicted upon Plaintiff.  Defendants
27         Flores became aware of these complaints written against her fellow officers, and began to
28         purposely subject Plaintiff to extreme harassment techniques.  On October 7, 2019, as

                                              10

> Plaintiff was walking past Defendant Flores, she loudly exclaims so as other inmates could hear: "You're a fucking piece of shit!!".  Defendant yelled-out this verbiage knowing that inmates overhearing such would accept it as a true account that Plaintiff is an offender of sexual molestation against minors—thus placing Plaintiff at risk of assault or being killed by inmates. …
>
> Defendant caused Plaintiff to suffer severe emotional distress to the point of experiencing suicidal ideation, anxiety from fear of attack by inmates, and fear to seek and follow through with redress of the harms being caused.

(ECF No. 58 at 7.)

Accepting all the allegations of the first amended complaint as true, and construing all ambiguities or doubts in Plaintiff's favor, Plaintiff has stated a cognizable retaliation claim against Defendants Eslick and Flores.  Plaintiff alleges that Defendant Eslick knew of Plaintiff's complaints against him and because of such complaints repeated false Rules Violation Report were issued against him.  Whether Plaintiff can prove that Defendant Eslick actually issued any false Rules Violation Reports against Plaintiff is a question that can only be resolved by way of motion for summary judgment based upon a review of the applicable evidence.  In addition, as stated above, it is alleged that it is well-known that the prison term "piece of shit" clearly denotes a "child molester" to other inmates.  As to Defendant Flores, Plaintiff specifically argues she became aware of complaints against her colleagues and called Plaintiff a "piece of shit" when walking by.  It is further alleged that Flores yelled this statement knowing that inmates overhearing such would accept it as a true account that Plaintiff is an offender of sexual molestation against minors—thus placing Plaintiff at risk of assault or being killed by inmates.  As a result of Flores's actions, Plaintiff suffered severe emotional distress to the point of experiencing suicidal ideation and anxiety from fear of attack by inmates.  Contrary to Defendant's argument, these allegations are sufficient, at the pleading stage, to state a cognizable claim for retaliation against Defendant Flores.

In sum, the first amended complaint puts both Defendants Eslick and Flores on sufficient notice of what they are alleged to have done and why those alleged acts violated Plaintiff's constitutional rights. Further details may be developed in discovery. See, e.g., Bell Atlantic v. Twombly, 550 U.S. at 555 (internal quotations omitted) (Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim ... is and the grounds upon

1    which it rests."); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) ("This

2    simplified notice pleading standard relies on liberal discovery rules and summary judgment

3    motions to define disputed facts and issues and to dispose of unmeritorious claims.").

4    Accordingly, the Court recommends that Defendants' motion to dismiss be denied.

5         While the Court is required to make this finding under the applicable pleading standard,

6    Plaintiff is cautioned that the Court is making no finding as to whether Plaintiff can prove his

7    claims with evidence at trial.  In addition, although Defendants previously opted out of the

8    scheduled settlement conference, in light of this ruling, they are free to request another settlement

9    conference.

10                                        **III.**

11                              **RECOMMENDATIONS**

12        Based on the foregoing, it is HEREBY RECOMMENDED that:

13    1.    Assuming the validity of Plaintiff's allegations at the pleading stage only,

14          Defendants' motion to dismiss the deliberate indifference and retaliation claims be

15          denied;

16    2.    Plaintiff's motion to amend the complaint be denied as unnecessary and the

17          proposed second amended complaint lodged on July 5, 2023, be stricken from the

18          record; and

19    3.    Defendants may request that the Court schedule another settlement conference.

20        These Findings and Recommendations will be submitted to the United States District Judge

21    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14)**

22    **days** after being served with these Findings and Recommendations, the parties may file written

23    objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

24    Findings and Recommendations."  The parties are advised that failure to file objections within the

25    specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834,

26    838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

27

28    IT IS SO ORDERED.

1

2    Dated:   **July 25, 2023**

UNITED STATES MAGISTRATE JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28