UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO PLAINTIFF, | No. 1:21-cv-00769-KES-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION |
| v. | FOR SUMMARY JUDGMENT |
| D. ESLICK, et al. | (ECF No. 124) |
| Defendants. | |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed January 14, 2026. (ECF No. 124.)

**I.**

**RELEVANT BACKGROUND**

This action currently proceeds on Plaintiff's First Amendment retaliation claims against Defendants Satterfield and Flores.

Defendants filed an answer to the original complaint on January 18, 2022. (ECF No. 30.)

On January 26, 2022, the Court set the case for settlement conference on April 12, 2022. (ECF No. 31.) However, on March 22, 2022, Defendants filed a notice to opt-out of the settlement conference which was granted this same day. (ECF Nos. 36, 37.) On this same day,

1

the Court issued the discovery and scheduling order.  (ECF No. 38.)

On May 5, 2023, the Court granted Plaintiff's motion to amend the complaint and his first amended complaint was filed this same date.  (ECF Nos. 54, 55.)

On May 15, 2023, Defendant Satterfield filed an answer to the first amended complaint, and Defendants Eslick and Flores filed the instant motion to dismiss.  (ECF Nos. 56, 57.)  An amended motion to dismiss was filed on May 16, 2023.  (ECF No. 60.)

On July 5, 2023, Plaintiff filed an opposition and motion to amend the complaint, along with a proposed second amended complaint which was lodged.  (ECF Nos. 67, 68.)   Defendants filed a reply on July 19, 2023.  (ECF No. 69.)

On July 25, 2023, Findings and Recommendations were issued recommending denial of Defendants' motion to dismiss and denial of motion to amend as unnecessary.  (ECF No. 70.) The Findings and Recommendations were adopted in full on August 20, 2023.  (ECF No. 71.)

On September 12, 2023, Defendants Eslick and Flores filed an answer to the operative complaint.  (ECF No. 72.)

On September 13, 2023, the Court issued an amended scheduling order, which was modified on December 12, 2023.  (ECF Nos. 73, 75, 77.)

On March 8, 2024, Eslick, Flores and Satterfield moved for summary judgment on the first amended complaint. (ECF No. 82.)

On September 15, 2025, Defendants' motion for summary judgment was granted as to Eslick and Flores on Plaintiff's Eighth Amendment deliberate indifference claims but denied all three defendants' motion concerning Plaintiff's First Amendment retaliation claims. (ECF No. 118 at 8.)  The denial specific to Satterfield and Flores was issued without prejudice, allowing for further discovery on the new First Amendment retaliation claims set forth in the second amended complaint, adopting the second amended complaint as the operative complaint, and permitting the filing of a renewed motion for summary judgment on those new claims. (Id.) Consequently, the instant motion addresses only the remaining retaliation claims against Satterfield and Flores.

///

///

Plaintiff did not file an opposition to the instant motion and the time to do so has passed.[1] Local Rule 230(l). Accordingly, Defendants' motion for summary judgment is deemed submitted without oral argument. (Id.)

## II.

## LEGAL STANDARD

### A.      Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

///

---

[1] The motion was accompanied by a Rand warning, pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), as well as the requirements for filing an opposition pursuant to Local Rule 260. (ECF No. 32-2.)

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.    Summary of Plaintiff's Second Amended Complaint

#### 1.    Allegations Against Defendant Satterfield

Defendant Satterfield "became aware that Plaintiff initiated the process necessary to exhaust administrative remedies involving other Defendants Flores and Eslick." (ECF No. 119 at 6.) Plaintiff had to write complaints concerning Officer Eslick's misdeeds and obtain replies from her supervisors. (Id.) Satterfield became aware of "the complaints submitted by Plaintiff" and began to harass Plaintiff as a result. (Id.)

Plaintiff further alleges that on February 16, 2020, Satterfield conducted an unclothed body search on Plaintiff, without cause. (Id.) Satterfield told Plaintiff, "you're going to the hole!" (Id.) Satterfield remarked to Plaintiff that "you keep writing 602's (inmate appeals on Eslick and other officers here)." (Id.) Satterfield then moved Plaintiff from his housing into another "to create further turmoil for Plaintiff." (Id.) Satterfield "instigated his Superior Lieutenant Bullock" to place Plaintiff in the Administrative Segregation Unit (ASU) on February 13, 2021. (Id. at 7.) Thereafter, Sgt. Sesma determined that Plaintiff "was wrongfully placed" in ASU. (Id.) Satterfield "took unconstitutional action against Plaintiff as retaliation for Plaintiff's earlier written grievances upon Eslick and [] Flores." (Id.) Throughout the remainder of February and March 2021, Satterfield stalked Plaintiff, telling him, "you keep it up (filing the 602 complaints), and you will next be in a plastic bag." (Id.)

On October 7, 2019, Satterfield began "excessively repeated misconduct with threats that were carried out with 'do not grievance Flores or else… 'we'll get your points up and send you to

4

a 4 yard where you'll get hit….you keep complaining of Eslick.'" (Id. at 8.) On December 17, 2019, Flores called Satterfield to the building and Satterfield destroyed Plaintiff's property and documents regarding Defendants in front of many witnesses on the dayroom floor and then threatened Plaintiff when he went to recover the documents. (Id.)

On February 10, 2020, Satterfield fabricated "two reports in collusion with Defendants carrying out threats said to Plaintiff." (Id.) On February 16, 2020, Satterfield fabricated a Rules Violation Report (RVR) after violating Plaintiff when he was leaving church. (Id.) Satterfield lied about delaying yard, and the findings of the RVR were determined to be untrue. (Id.) Satterfield falsified another RVR on March 22, 2020, in which Lt. Sebold dismissed the RVR. (Id.) Lt. Bullock went into Inmate Becker's cell twice and took Plaintiff's legal work but then it was returned with missing pages. (Id.)

2. Allegations Against Defendant Flores

Plaintiff alleges that Flores became aware that Plaintiff "initiated the process necessary to exhaust administrative remedies involving the other defendants Eslick and Satterfield." (ECF No. 119 at 9.) Once Flores became aware of the written complaints against her fellow officers, she subjected Plaintiff to "extreme harassment techniques." (Id.) On October 7, 2019, as Plaintiff was walking past Flores, she exclaimed "[y]ou're a fucking piece of shit," knowing other inmates would overhear it "as a true account" that Plaintiff was a child molester, placing Plaintiff at risk of inmate attack. (Id.) Flores informed Satterfield "about her provocation of Plaintiff" and Satterfield threatened Plaintiff "you better not 602 (file grievance) [against] her (Flores)." (Id.)

After complaining to Flores of Eslick's misconduct, Flores took actions against him. (Id. at 10.) On December 17, 2019, Flores called Satterfield and had property and documents destroyed, given Plaintiff informed Flores of the documents. (Id.) The December 17, 2019, cell search is described in his grievances "along with the fabrication of RVR in collusion with Defendants on February 10, 2019, [and] does not issue Plaintiffs mail/ materials on April 30, 2020." (Id.)

**B.      Statement of Undisputed Facts[2,3]**

1.      Plaintiff was housed at Sierra Conservation Center (SCC) from May 9, 2018, to August 23, 2021, and assigned to Facility C, a Level III facility, which was a Sensitive Needs Yard (SNY), until May 1, 2021, when it became a Non-Designated Programing Facility (NDPF). (Declaration of J. Toubeaux (Toubeaux Decl.), ¶ 5.)

2.      At all relevant times to the Second Amended Complaint (SAC), Officer D. Satterfield has worked as a correctional officer for CDCR at SCC.  (Declaration of Officer Satterfield (Satterfield Decl.), ¶ 1.)

3.      At all relevant times to the SAC, Officer J. Flores worked as a correctional office for CDCR at SCC.  (Declaration of Officer Flores (Flores Decl.), ¶ 1.)

4.      Satterfield and Flores served interrogatories to Plaintiff to ascertain his claims Against them. (Satterfield's and Flores's Set Two Interrogatories, attached collectively as Ex. A to the Declaration of Nilufar K. Majd (Majd Decl.), ¶ 2.)

5.      In his responses to Satterfield's interrogatories, Plaintiff admits he has no witnesses to support his claim concerning Satterfield's threats to him on October 7, 2019. (Plaintiff's Responses to Satterfield's Interrogatories, Response to Interrogatory No. 15, Ex. B, Majd Decl.,

¶ 3.)

6.      To support his claim that Satterfield destroyed his property on December 17, 2019 as a retaliatory act, Plaintiff cites grievances 00857, 0788, 0736, 1030, and 0786. (Plaintiff's Responses to Satterfield's Interrogatories, Response to Interrogatory No. 16, Ex. B, Majd Decl., ¶ 3.)

7.      Plaintiff fails to specify any witnesses to support his claim that Satterfield

---

[2] Hereinafter referred to as "UF."

[3] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate statement of disputed facts. Local Rule 56-260(b).  Therefore, the Court was left to compile the summary of undisputed facts from Defendants' statement of undisputed facts and Plaintiff's verified complaint. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

6

conducted a search of his cell on December 17, 2019.  (Plaintiff's Responses to Satterfield's Interrogatories, Response to Interrogatory No. 17, Ex. B, Majd Decl., ¶ 3.)

8.      Satterfield asked Plaintiff to state all facts, identify all witnesses and documents to support his claim that Satterfield's February 10, February 16, and March 22, 2020, RVRs were retaliatory; in response, Plaintiff was unable to identify any specific facts, witnesses, or documents to support his claims that the February 10, 16, and March 22 RVRs were retaliatory. (Plaintiff's Responses to Satterfield's Interrogatories, Response to Interrogatory Nos. 18-23, Ex. B, Majd Decl., ¶ 3.)

9.      To support Plaintiff's retaliation claim against Flores, in his responses to interrogatories, Plaintiff cites to his grievances, "00857, 01030, 00404, 0786,788, 736." (Plaintiff's Responses to Flores's Interrogatories, Response to Interrogatory No. 15, Ex. C, Majd Decl., ¶ 4.)

10.      Flores's interrogatories asked Plaintiff to identify when he contacted Flores about documenting Officer Eslick's behavior, as alleged in his SAC; in response to this interrogatory, Plaintiff was unable to specify when he contacted Flores about Eslick's alleged misconduct. (Plaintiff's Responses to Flores's Interrogatories, Response to Interrogatory No. 16, Ex. C, Majd Decl., ¶ 4.)

11.      Plaintiff is unable to identify any witnesses to support his claim that "after complaining to Defendant Flores of Defendant Eslick'[s] misconduct, Flores does what is described" as alleged in the SAC.  (Plaintiff's Responses to Flores's Interrogatories, Response to Interrogatory No. 17, Ex. C, Majd Decl., ¶ 4.)

12.      In his responses to Flores's interrogatories, Plaintiff is unable to identify any facts Or witnesses to support his claim that the December 17, 2019, cell search allegedly directed by Flores was retaliatory.  (Plaintiff's Responses to Flores's Interrogatories, Response to Interrogatory Nos. 18-19, Ex. C, Majd Decl., ¶ 4.)

13.      Further, to support his claim that Flores's February 10, 2010, RVR was fabricated, Plaintiff generally claims he "saw Eslick having conversations with the others Flores and Satterfield" and that he was "threaten[e]d by Satterfield for the first time in Building 1 where he

7

was not assigned but Flores was;" by way of this response, Plaintiff fails to offer any specific facts to support his claim that Flores fabricated an RVR prepared on February 10, 2020. (Plaintiff's Responses to Flores's Interrogatories, Response to Interrogatory Nos. 21, Ex. C, Majd Decl., ¶ 4.)

14.     Satterfield was assigned as Facility C Security Patrol Officer from August 2019 to February 2020.  (Satterfield Decl., ¶ 3.)

15.     On December 17, 2019, Satterfield's job assignment was Security Patrol Officer at Facility C.  (Satterfield Decl., ¶ 4.)

16.     In this role, his job duties included patrolling facility grounds to investigate unusual, suspicious, or dangerous activities and managing inmate movement to ensure the safety and security of the institution.  (Satterfield Decl., ¶ 4.)

17.     As a Security Patrol Officer, Satterfield worked with two other correctional officers, to supervise the movement and conduct of incarcerated individuals in various areas, including kitchens, work crews, and recreational yards.  (Satterfield Decl., ¶ 4.)

18.     Satterfield denies destroying or removing Plaintiff's property from his cell in December of 2019.  (Satterfield Decl., ¶ 5.)

19.     Satterfield denies the removal or destruction of any of Plaintiff's property at any time.  (Satterfield Decl., ¶ 5.)

20.     On February 10, 2020, Satterfield prepared a supplemental report to Flores's RVR No. 6966039 for unlawful influence.  (Satterfield Decl., ¶ 6; 2/10/20 Supplemental RVR No. 6966039, Ex. B, Toubeaux Decl., ¶ 7.)

21.     On February 11, 2020, Satterfield prepared a supplemental RVR to Officer Eslick's RVR No. 6966726 for unlawful influence.  (Satterfield Decl., ¶ 10; 2/11/20 Supplemental RVR No. 6966726, Ex. D, Toubeaux Decl., ¶ 9.)

22.     Plaintiff was found guilty at a disciplinary hearing of RVR No. 6966726 for unlawful influence, resulting in 30 days of credit loss, 30-day loss of phone privileges and yard recreational privileges.  (Satterfield Decl., ¶ 13; ECF No. 82-21, Disciplinary Hearing Results Re: RVR 6966726, Ex. E, Toubeaux Decl., ¶ 10.)

8

23.    On February 16, 2020, Satterfield worked as a Facility C Security Patrol Officer, which among his job duties required him to monitor the activities of inmates housed in Facility C, including ensuring inmates returned to their cells after evening programming for lock up. (ECF No. 82-18, Satterfield Decl., ¶ 9.)

24.    Satterfield issued RVR No. 6967871, for "Delaying a Peace Officer in the Performance of Duties," in violation of California Code of Regulation, Title 15, Section 3005(a). (ECF No. 82-18, Satterfield Decl., ¶ 10; ECF No. 82-21, 2/16/20 RVR No. 6967871, Ex. F, Toubeaux Decl., ¶ 11.)

25.    A Disciplinary Hearing on this RVR was held and the Senior Hearing Officer found Plaintiff guilty of disobeying the lawful order of a peace officer, which was reduced to a 128 Counseling Chrono and placed in Plaintiff's file.  (ECF No. 82-18, Satterfield Decl., ¶ 11; ECF No. 82-21, Disciplinary Hearing Results Re RVR No. 6967871, Ex. G, Toubeaux Decl., ¶ 12.)

26.    As a result of RVR 6967871, which was reduced to a 128 Counseling Chrono, Plaintiff did not lose any good-time credits or other privileges, his incarceration has not been extended, his housing has not been affected and he has not been subjected to any criminal prosecution because of the issuance of this RVR.  (ECF No. 82-21, Toubeaux Decl., ¶ 13.)

27.    Satterfield vaguely recalled conducting an unclothed body search on Plaintiff on February 16, 2020, in the Facility C program office, where unclothed body searches are conducted.  (ECF No. 82-18, Satterfield Decl., ¶ 12.)

28.    On March 22, 2020, Satterfield issued RVR No. 6982385 to Plaintiff for disobeying direct orders by socializing in the dayroom without prior staff approval in violation of the Code of Regulations, Title 15, Section 3005, subdivision (b).  (Satterfield Decl., ¶ 15; 3/22/20 RVR No. 6982385, Ex. E, Toubeaux Decl., ¶ 10.)

29.    A Disciplinary Hearing was on RVR 6982385 held by a Senior Hearing Officer and the RVR was dismissed for lack of evidence and Plaintiff suffered no loss of rights. (Satterfield Decl., ¶ 16; Disciplinary Hearing Results Re RVR No. 6982385, Ex. F., Toubeaux Decl., ¶ 11.)

9

30.    The Senior Hearing Officer at the Disciplinary Hearing on RVR 6982385 noted, that, "it is possible that [the offenses] occurred and simultaneously would not have been witnessed by other staff." (Satterfield Decl., ¶ 16; Disciplinary Hearing Results Re RVR No. 6982385, Ex. F., Toubeaux Decl., ¶ 11.)

31.    Plaintiff's records indicate he was housed in C3-148L on April 8, 2020, for quarantine based on being symptomatic for Influenza Like Illness/ COVID-19 and was released and moved back to Building 1, Cell 118 after completing quarantine on April 14, 2020. (ECF No. 82-10, Declaration of Captain R. Jauregui (Jauregui Decl.), ¶ 4.)

32.    Plaintiff remained in Building 5 in various cells until his transfer to Pleasant Valley State Prison, with one move into the former ASU housing from February 13-February 18, 2021. (ECF No. 82-10, Jauregui Decl., ¶ 5.)

33.    On February 13, 2021, during the morning meal programming release, Plaintiff approached Sgt. Sesma claiming he could no longer live in his assigned cell. (ECF No. 82-19, Declaration of Sgt. J. Sesma (Sesma Decl.), ¶ 4.)

34.    On February 13, 2021, because Plaintiff expressed a safety concern, Sgt. Sesma subsequently conducted an interview with Plaintiff to assess his alleged safety concerns, however, when Sgt. Sesma started to ask Plaintiff questions about what specific safety concerns Plaintiff had, Plaintiff became evasive and uncooperative in Sgt. Sesma's investigation and did not provide Sgt. Sesma with any information to decide as to the validity of his concerns. (ECF No. 82-19, Sesma Decl., ¶ 4; ECF No. 82-3, Bullock Decl., ¶ 16.)

35.    Sgt. Sesma provided his interview results to Lt. Bullock, Sgt. Sesma's direct supervisor, who then placed Plaintiff in ASU housing on the same day, so that Plaintiff's non-specific safety concerns could be investigated, and a determination could be made if there was safety or enemy concern that needed to be addressed at the institution. (ECF No. 82-19, Sesma Decl., ¶ 5; ECF No. 82-3, Bullock Decl., ¶ 16.)

36.    Pursuant to the Code of Regulations, Title 15, Section 3335, Lt. Bullock then prepared, signed, and read the ASU Placement Notice to Plaintiff. (ECF No. 82-19, Sesma Decl., ¶ 6; ECF No. 82-3, Bullock Decl., ¶ 17; ECF No. 82-21, ASU Placement Notice, Ex. H,

10

Toubeaux Decl., ¶ 14.)

37.     After Plaintiff was placed in ASU housing, on February 17, 2021, Sgt. Sesma investigated Plaintiff's safety and enemy concerns; however, Sgt. Sesma determined that Plaintiff's safety concerns were both unfounded and unsubstantiated.  (ECF No. 82-19, Sesma Decl., ¶ 7; ECF No. 82-3, Bullock Decl., ¶ 17.)

38.     Upon his investigation, Sgt. Sesma prepared a CDC 128-B General Chrono, advising Plaintiff that his safety concerns were unfounded and unsubstantiated, and Plaintiff was then released from ASU housing back to Facility C housing on February 18, 2021.  (ECF No. 82-19, Sesma Decl., ¶¶ 7-8; ECF No. 82-3, Bullock Decl., ¶ 18; ECF No. 82-21, Ex. I, Toubeaux Decl., ¶ 15.)

39.     From August 2019 to October 2020, Correctional Officer Flores was assigned as a relief officer on Facility C, at SCC.  (Flores Decl., ¶ 2.)

40.     From October 2020 to August 2021, Flores was assigned as a Visiting Process Officer, on the main side of the prison, at which time she had no interface with inmates.  (Flores Decl., ¶ 2.)

41.     As a Relief Officer, Flores's job duties included attending to various job positions, where she was needed on Facility C; at all times, her job duties included supervising inmates to ensure inmates were complying with prison rules to preserve the safety and security of inmates, prison staff and the institution.  (Flores Decl., ¶ 3.)

42.     On December 17, 2019, Flores was assigned as a Floor Officer in Facility C, Building 1 and in this capacity, her primary responsibilities included monitoring the safety and security of staff within the housing unit and dayroom, enforcing inmate compliance with institutional rules, and conducting thorough inspections of cells and common areas for contraband—such as weapons, narcotics, and unauthorized items—to ensure the overall security of the institution.  (Flores Decl., ¶ 5.)

43.     On December 17, 2019, Flores's partner was Correctional Officer Rivera; to the extent Flores conducted any cell searches that day, she would have asked her partner to assist her with such a cell search, or another floor officer assigned to Building 1.  (Flores Decl., ¶ 6.)

11

44.    During the time Plaintiff was housed at SCC, Flores issued one RVR on February 10, 2020, RVR No. 6966039 for Unlawful Influence.  (Flores Decl., ¶ 10; 1/10/20 RVR No. 6966039, Ex. A, Toubeaux Decl., ¶ 6.)

45.    Plaintiff was found guilty at a disciplinary hearing of the RVR for unlawful influence, resulting in 30 days of credit loss, 10 days of confinement to quarters and 90 losses of yard, dayroom, and package privileges.  (Flores Decl., ¶ 13; Satterfield Decl.,¶ 9; Disciplinary Hearing Results Re RVR 6966039, Ex. C, Toubeaux Decl., ¶ 8.)

46.    On April 30, 2020, Plaintiff was housed at Facility C, Building 5.  (Flores Decl., ¶ 16; Toubeaux Decl., ¶ 12.)

47.    On April 30, 2020, Flores worked at Facility C, Building 1, as a Floor Officer. (Flores Decl., ¶ 17; Toubeaux Decl., ¶ 13.)

48.    Institutional mail logs confirm Plaintiff received no confidential/ legal mail on April 30, 2020.  (Flores Decl., ¶ 18; Toubeaux Decl. ¶ 15.)

49.    On February 20, 2020, Plaintiff submitted a Grievance No. SCC-X-20-01030 against Satterfield, claiming he received RVR No. 6967871 issued by Satterfield to retaliate against Plaintiff.  (Grievance No. SCC-X-20-01030, Ex. G, Toubeaux Decl., ¶ 16.)

50.    Plaintiff appealed Grievance No. SCC-X-20-01030; however, the subsequent institutional review found no proof of policy non-compliance in relation to the RVR.  (Grievance No. SCC-X-20-01030, Ex. G, Toubeaux Decl., ¶ 16.)

51.    On February 20, 2020, Plaintiff submitted Grievance SCC-X-20-00786 against Facility C Officers Flores, Eslick, Rivera, and Satterfield, alleging they retaliated against him, conspired to write RVRs against Plaintiff, colluded, were abusive, conducted themselves unethically, and conspired to have Plaintiff "kicked off the yard"; Plaintiff claimed that the alleged actions of the officers caused Plaintiff brain damage and as a result required him to take prescribed medication.  (ECF No. 82-21, Grievance No. SCC-X-20- 00786, Ex. M, Toubeaux Decl., ¶ 21.)

52.    In Grievance No. SCC-X-20-00404, Plaintiff alleged multiple officers wrote "115s in collusion" to have Plaintiff "kicked off the yard."  (Grievance No. SCC-X-20-00404, Ex. H,

Toubeaux Decl., ¶ 17.)

53.    In relevant part, Plaintiff claims in Grievance No. SCC-X-20-00404 that on December 17, 2019, Satterfield threw away his property (including Plaintiff's documentation of misconduct).  (Grievance No. SCC-X-20-00404, Ex. H, Toubeaux Decl., ¶ 17.)

54.    Grievance No. SCC-X-20-00404 was rejected because Plaintiff failed to identify the alleged staff member, he was filing a grievance against.  (Grievance No. SCC-X-20-00404, Ex. H, Toubeaux Decl., ¶ 17.)

55.    In Grievance No. SCC-X-20-00788 submitted on March 18, 2020, Plaintiff claims Satterfield destroyed Plaintiff's property in a cell search on December 17, 2019, and previously told Plaintiff, "don't 602 her" on October 7, 2019.  (Grievance No. SCC-X-20-00788, Ex. I, Toubeaux Decl., ¶ 18.)

56.     Plaintiff's appeal to Grievance No. SCC-20-00788 was rejected because it exceeded the time constraint to file an appeal within 30 calendar days from the date the incident/ discovery of an issue occurred.  (Grievance No. SCC-X-20-00788, Ex. I, Toubeaux Decl., ¶ 18.)

57.    On the same day, on March 18, 2020, Plaintiff submitted Grievance No. SCC-X 20-00736, which appears to be a duplicate of Grievance No. SCC-X-20-00788; this grievance was canceled because it was a duplicate of a previous grievance.  (Grievance No. SCC-X-20-00736, Ex. J, Toubeaux Decl., ¶ 19.)

58.    On May 2, 2020, Plaintiff submitted Grievance No. SCC-X-20-00857, claiming Satterfield continually harassed him since October 7, 2019, when he allegedly told Plaintiff, "not to 602 Officer Flores" and lied to the Senior Hearing Officer during his last RVR.  (Grievance No. SCC-X-20-00857, Ex. K, Toubeaux Decl., ¶ 20.)

59.    Investigation into Plaintiff's appeal of Grievance No SCC-X-20-00857 included interviews of eight of the nine witnesses Plaintiff identified in support of his grievance. (Grievance No. SCC-X-20-00857, Ex. K, Toubeaux Decl., ¶ 20.)

60.    In the investigation of Grievance No. SCC-X-20-00857, information received from eight of the nine interviews did not support Plaintiff's claims.  (Grievance No. SCC-X-20-00857, Ex. K, Toubeaux Decl., ¶ 20.)

13

61.    The SCC Warden determined that the allegations of misconduct in Grievance No. SCC-X-20-00857 were unfounded.  (Grievance No. SCC-X-20-00857, Ex. K, Toubeaux Decl., ¶ 20.)

62.    The Custodian of Records for the personnel records of Satterfield and Flores confirmed that both Satterfield and Flores had a regular day off on October 7, 2019, and did not work on said date.  (Toubeaux Decl., ¶ 21.)

**C.    Analysis of Defendants' Motion**

Defendants argue that, despite extensive discovery, Plaintiff cannot establish the retaliation claims because he relies on conclusory allegations unsupported by witnesses or evidence.  In the alternative, Defendants argue they are entitled to qualified immunity.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (2005). "The adverse action need not be an independent constitutional violation." Id. (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)); see also Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). A plaintiff, however, must allege a retaliatory motive—that is, a causal connection between the adverse action and his protected conduct. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2021).

1.    Defendant Satterfield

In the SAC, Plaintiff alleges that Satterfield: (1) destroyed his legal documents and personal property; (2) fabricated multiple disciplinary reports (RVRs); (3) subjected him to an unjustified unclothed body search; (4) wrongfully placed him in ASU Housing; and (5) orchestrated housing transfers in retaliation for filing complaints or grievances against his colleagues in violation of Plaintiff's First Amendment rights.

a.    **Cell Search on December 17, 2019-Destruction of Property**

Here, it is undisputed that on December 17, 2019, Satterfield's job assignment was

14

Facility C Security Patrol.  (UF 15.)  Satterfield declares that as a Security Patrol Officer, he did not work with Defendant Flores, and Plaintiff has submitted no evidence to the contrary. (Satterfield Decl., ¶ 5.)  In addition, despite Plaintiff's allegation that his property was destroyed "in front of many witnesses on the dayroom floor", Plaintiff admitted that he has no witnesses to support his claim.  (UF 7.)  Indeed, Plaintiff has not filed an opposition to the instant motion or submitted any other evidence.  Thus, Plaintiff has failed to establish that any adverse action was taken against him-an essential element of a retaliation claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Furthermore, Plaintiff has failed to establish the requisite causal link to support a claim for retaliation.  See, e.g., Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this' ") (citation omitted).  Plaintiff alleges Satterfield was "aware that [Plaintiff] initiated the process necessary to exhaust administrative remedies involving other Defendants Flores and Eslick." (ECF No. 119 at 6.)  However, it is undisputed that the alleged search occurred on December 17, 2019, and Plaintiff did not file the grievances at issue (SCC-X-20-01030 and 00786) until February 20, 2020.  (UF 50, 52.)  Thus, a retaliatory motive cannot be inferred from a timeline where the adverse action precedes the protected conduct, and Plaintiff's speculation that Satterfield was "aware' of his intent to file future grievances is "merely colorable" and not "significantly probative."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  Accordingly, there is no genuine issue of dispute and Defendant is entitled to summary judgment.

### b.    Fabricated Disciplinary Reports

Plaintiff alleges that Satterfield fabricated disciplinary reports (RVRs) on February 10, 2020, "in collusion with Defendants carrying out threats said to Plaintiff." (ECF No. 119 at 8.)[4]

Here, on February 10, 2020, Flores issued RVR No. 6966039 against Plaintiff for unlawful influence in violation of California Code of Regulations, Title 15, Section 3013.  (Flores

---

[4] Based on the prison records, there was only one supplemental RVR issued by Satterfield on February 10, 2020, and another on February 11, 2020, for incidents that occurred on February 10, 2020. (UF 20, 22.)

Decl., ¶ 11.) Flores reported that while performing her duties, Plaintiff approached her and made a "quid pro quo" threat; specifically, he stated that if she did not influence Eslick to remove a prior 128 Counseling Chrono from his file, he would assist inmate Fernandez in pending litigation against Flores and other staff. (Id.) On this same date, officer Eslick reported to Satterfield that Plaintiff made a similar threat to him. (Satterfield Decl., ¶ 11.) Based on both reports, Satterfield provided supplemental documentation of the incidents. (Satterfield Decl., ¶¶ 6-7, 11.) Contrary to Plaintiff's contention, there reports were not additional charges but were necessary documentation for the safety and security of the institution to report instances of unlawful influence of staff. (Satterfield Decl., ¶¶ 7, 11.) Of more significance, Plaintiff was provided disciplinary hearings and was found guilty of both underlying RVRs, resulting in the loss of credit. (UF 22, 45.)

Furthermore, Plaintiff admitted he has no evidence to support his claim, as he was unable to identify a single fact, witness, or document that these RVRs were retaliatory. (UF 8.) Consequently, Plaintiff has failed to meet his burden of proof, and Defendant is entitled to summary judgment.

### c.    February 16, 2020 Unclothed Body Search and RVR

Plaintiff alleges that on February 16, 2020, Satterfield conducted an unclothed body search without cause and issued a retaliatory RVR because of Plaintiff's grievances against officers Eslick and Flores. (EC No. 119 at 6, 8.)

First, Plaintiff's claim is temporally implausible, as Plaintiff alleges the search was retaliatory for filing grievances, yet prison records establish he did not submit his first grievance against Eslick and Flores until February 20, 2020-four days *after* the search took place. Therefore, because it is undisputed that the search preceded the alleged protected conduct, Plaintiff's claims fails.

Second, Defendant submits evidence that the February 16, 2020 RVR charged Plaintiff with delaying a peace officer because he refused a direct order to return to his building for lock-up and remained on the yard after all other inmates had cleared. (Satterfield Decl., ¶ 10; Bullock Decl., ¶ 12; Tague Decl., ¶ 12.) This occurrence created an opportunity for Plaintiff to plant or

16

retrieve contraband, and the unclothed body search was a reasonable response.

Third, Plaintiff admitted he has no evidence to support his claim, as he was unable to identify a single fact, witness, or document that these RVRs were retaliatory.  (UF 8.) Consequently, Plaintiff has failed to meet his burden of proof, and Defendant is entitled to summary judgment.

### d.      March 22, 2020 RVR

On March 22, 2020, Satterfield issued an RVR for disobeying direct orders by socializing in the dayroom without prior staff approval in violation of the Code of Regulations, Title 15, Section 3005, subdivision (b).  (UF 28.)  Satterfield observed Plaintiff socializing in the dayroom and "running the tier" to receive property and canteen items, despite a prior order revoking his dayroom privileges from March 11 to June 9, 2020.  (Id.)  Although the RVR was ultimately dismissed for lack of evidence, the Senior Hearing Officer explicitly acknowledged that it was possible the offenses occurred outside the view of other staff.  (UF 30.)  There is nothing about the finding of the lack of evidence that demonstrates Satterfield's issuance of this RVR was pretextual. See Shepard v. Quillen, 840 F.3d 686, 690 (9th Cir. 2016); cf. Quiroz v. Horel, 85 F.Supp.3d 1115, 1143 (N.D. Cal. Mar. 31, 2015) (finding disconnect between the issuance of, and the stated reasons for, the RVR lead to a reasonable inference that the reasons were pretextual). Rather, the dismissal reflects the application of the high evidentiary standard and not the lack of a legitimate basis for the officer to report observed misconduct by Plaintiff.

Further, Plaintiff has identified no evidence, direct or indirect, sufficient to support the second element of his claim—i.e., that Satterfield issued the RVR charging him with disobeying a direct order because Plaintiff had filed prior grievances and/or complaints.  (UF 8.)  Accordingly, Satterfield is entitled to summary judgment on this claim.

### e.      Housing Placement

Plaintiff contends that Satterfield moved Plaintiff from his housing unit to another to "create further turmoil" for Plaintiff.  (ECF No. 119 at 6.)  Defendant submits evidence by Captain Jauregui, who played a key role in inmate movements during the COVID-19 pandemic, who confirmed that Plaintiff was transferred from Building 1 to Building 5  in Facility C to make

room for more quarantine space for inmates with COVID-19 related symptoms during the height of the pandemic. (UF 31; Jauregui Decl., ¶¶ 4-5.) Plaintiff remained in Building 5 in various cells until his transfer to Pleasant Valley State Prison except for his time in ASU from February 13-18, 2021. (UF 32.) Thus, Captain Jauregui declares the movements at SCC were incident to prison operations and to make space for isolation and quarantine releases during the pandemic. (Jauregui Decl., ¶¶ 6-7.) Further, Plaintiff has failed to submit any evidence to rebut Satterfield's declaration that he was not involved in the housing of inmates and had no authority to do so. Accordingly, Satterfield is entitled to summary judgment on this claim.

### f.   ASU Placement

Plaintiff contends Satterfield "instigated his Superior Lieutenant Bullock" to place Plaintiff in the ASU housing on February 13, 2021. (ECF No. 119 at 6.) Contrary to Plaintiff's contention, Defendant submits prison records and staff confirm that Plaintiff was not involved in Plaintiff's placement in ASU on February 13, 2021. (UF 33-38; Bullock Decl., ¶ 19; Sesma Decl., ¶ 9; Satterfield Decl., ¶ 20.) More specifically, it is undisputed that Sergeant Sesma confirmed that Plaintiff approached him during dining program, and told him that he could no longer live in his assigned cell but when Sesma attempted to interview Plaintiff to discover the validity of his alleged safety concern, Plaintiff became evasive and uncooperative. (UF 33-34.) Consequently, Plaintiff was placed in ASU housing in order for his safety and the security of the prison, and he was provided an ASU placement notice by Lieutenant Bullock. (UF 35.)

On February 17, 2021, Sergeant Sesma completed his investigation into Plaintiff's safety concerns, confirming there was no evidence to substantiate Plaintiff's non-specific safety concerns. (UF 37-38.) Contrary to Plaintiff's contention, Sergeant Sesma denies ever telling Plaintiff he was "wrongfully" placed in ASU, but rather, informed Plaintiff he investigated his claims of non-specific safety concerns and those concerns were both unfounded and unsubstantiated and he would be released back to SNY. (Id.) Sesma documented his findings and placed them in Plaintiff's central file. (UF 38.) Both Sesma and Bullock confirm that Satterfield was not involved in Plaintiff's placement in ASU on February 13, 2021, and declare Plaintiff was placed in ASU housing based on his own unspecified safety concerns. (Bullock

18

Decl., ¶ 19; Sesma Decl., ¶ 9.)  Based on the evidence submitted, Plaintiff's retaliation claim fails as a matter of law.

        1.      <u>Defendant Flores</u>

In the SAC, Plaintiff alleges that Flores engaged in retaliation by enlisting Satterfield to threaten him, orchestrating a cell search and the destruction of his property, fabricating a RVR on February 10, 2020, and withholding his mail on April 30, 2020. (ECF No. 119 at 9–10.)

        **a.**      **Cell Search on December 17, 2019**

Plaintiff alleges that on December 17, 2019, Flores directed a retaliatory cell search and the destruction of his property.  (ECF No. 119 at 9-10.)  Despite Plaintiff's contention that the action occurred "in front of many witnesses" (ECF No. 119 at 8), Plaintiff admitted in his discovery responses that he was unable to identify any witnesses to support his claim that the December 17, 2019, cell search allegedly directed by Flores was retaliatory in nature.  (UF 12.)

In addition, Flores denies requesting Satterfield's assistance for the search (Flores Decl., ¶ 7), and Satterfield declared that the two officers did not work together on this date. (Satterfield Decl., ¶ 5.)  It is undisputed that Flores was authorized to conduct routine cell searches as part of her duty to find contraband and ensure institutional safety.  (UF 42.)  Thus, such authorized search serves a legitimate penological interest, defeating Plaintiff's retaliation claim.

Furthermore, Plaintiff has failed to present any evidence, beyond his conclusory allegations, to support his claim that Flores had knowledge of his protected activity at that time. (UF 10-11.)  Thus, because Plaintiff's claim is nothing more than speculation and is contradicted by the undisputed facts, Flores is entitled to summary judgment on this claim.

        **b.**      **February 10, 2020 RVR**

On February 10, 2020, Flores issued RVR No. 6966039 for Unlawful Influence for Unlawful Influence. (UF 44.)  Flores reported that Plaintiff approached her and attempted to exert unlawful influence by threatening to assist in litigation against her unless she removed a prior disciplinary "chrono" from his record.  (Flores Decl., ¶ 11.)  This quid pro quo threat constituted a violation of California Code of Regulations, Title 15.  (<u>Id.</u>)  Plaintiff's contention that the RVR

19

was "fabricated" is directly contradicted by the finding of guilty during the disciplinary process. During the disciplinary hearing, the Senior Hearing Officer reviewed and considered all the evidence and found Plaintiff guilty of "unlawfully attempting to influence staff's behavior toward him and attempting to have something negative removed from his file." (UF 45; Disciplinary Hearing Results Re RVR 6966039, Ex. C, Toubeaux Decl., ¶ 8.)  Further, during discovery when asked to identify specific facts, witnesses, or documents to support his claim, Plaintiff responded he "saw Eslick having conversations with the others Flores and Satterfield" and that he was "threaten[e]d by Satterfield for the first time in Building 1 where he was not assigned but Flores was." (UF 13.)  Plaintiff's response does not provide specific facts to support his claim that Flores fabricated the RVR, and because Plaintiff has failed to present evidence that the RVR did not serve a legitimate penological interest his claim fails as a matter of law.  Anderson, 477 U.S. at 249-50; Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### c. Withhold of Mail on April 30, 2020

Plaintiff claims Flores did not issue his mail/materials on April 30, 2020.  (ECF No. 119 at 10.)  It is an undisputed that on April 30, 2020, Flores was assigned to work in Building 1 of Facility C. (UF 46.) On that same date, Plaintiff was housed in Building 5 of Facility C. (UF 47.) Flores's declares that her official job duties on the date in question were limited to Building 1; she had no official responsibility to handle, process, or distribute mail for inmates housed in Building 5.  (Flores Decl., ¶ 17; Toubeaux Decl., ¶ 14.)  Flores further declares that she did not distribute or withhold Plaintiff's mail on April 30, 2020. (Flores Decl., 17.)  Plaintiff's claim that Flores withheld "mail/materials" is further refuted by official prison records.  Institutional logs and legal mail records confirm that Plaintiff received no legal or confidential mail on April 30, 2020. (UF 48.) Flores cannot be held liable for withholding mail that did not exist or was never delivered to the facility for Plaintiff on that day.  Thus, Plaintiff's claim rests on mere speculation that is contradicted by the facility's assignment and mail records. Consequently, Flores is entitled to summary judgment on this claim.[5]

---

[5] In light of the recommendation that Defendants' motion for summary judgment be granted on the merits of Plaintiff's claims, the Court declines to address Defendants' remaining argument in support of their summary judgment motion based on qualified immunity.

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment be granted; and

2.      Judgment be entered in favor of Defendants on all of Plaintiff's claims.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 1, 2026**

STANLEY A. BOONE
United States Magistrate Judge

21